**ORIGINAL**

FILED

JAN 6 2006

VINCENT M. COSCINO (BAR NO. 122086)
A. KENNETH HENNESAY, JR. (BAR NO. 187531)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
1900 Main Street, Fifth Floor
Irvine, California 92614-7321
Phone:  (949) 553-1313
Fax:  (949) 553-8354

Attorneys for Plaintiff
BURLINGAME CAPITAL PARTNERS II, L.P

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. SA 05-19544 RA |
| TERRY J. O'CONNOR, | Chapter 7 |
| Debtor. | |
| Taxpayer's Identification No. XXX-XX-3199 | |
| BURLINGAME CAPITAL PARTNERS II, L.P., a California limited partnership, | Adv. No. _____ |
| Plaintiff, | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT [11 U.S.C. § 523]** |
| v. | |
| TERRY J. O'CONNOR, | [HEARING DATE TO BE SET BY SUMMONS] |
| Defendant. | |

Plaintiffs Burlingame Capital Partners II, L.P., a California limited partnership ("Burlingame") allege as follows:

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

## THE PARTIES

1.      Burlingame is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the County of San Mateo, California.

2.      Terry J. O'Connor ("O'Connor" or the "Debtor") is the debtor in the above-referenced bankruptcy case. Burlingame is informed and believes and thereon alleges that O'Connor is, and at all times herein mentioned was, an individual residing in the State of California, the County of Orange.

## THE BANKRUPTCY CASE

3.      On or about October 11, 2005, the Debtor filed his voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

4.      According to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines, the deadline to file a complaint to determine the dischargeability of debts is January 6, 2006.

## JURISDICTION

5.      This is an adversary proceeding to determine the dischargeability of debts commenced under 11 U.S.C. § 523 and Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction over all claims asserted by Plaintiffs herein pursuant to 28 U.S.C. sections 151, 157, and 1334. Further, this Court has jurisdiction over all claims asserted by Plaintiffs herein pursuant to the doctrine of pendent jurisdiction. This is a "core proceeding" pursuant to 28 U.S.C. section 157(b)(1), (2)(I).

## VENUE

7.      Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1409, inasmuch as the Debtor's bankruptcy case, out of which this matter arises and to which this matter is related, is pending in this District. Moreover, the Debtor's debts and conduct that are the subject of this Complaint occurred in the State of California.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

-2-

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Burlingame's Secured Loan to O'Connor's Company Python and O'Connor's Individual Guaranty

8.      During all periods relevant to this action, O'Connor was the chief executive officer and the controlling shareholder of Python. O'Connor executed that certain Loan and Security Agreement dated December 30, 2002, on behalf of Python (the "Loan Agreement"). Also on December 30, 2002, O'Connor executed that certain Unconditional Guaranty ("Guaranty") in favor of Burlingame, whereby he personally guaranteed Python's performance under the Loan Agreement. The Loan Agreement and Guaranty are referred to collectively herein as the "Loan Documents." On or about December 31, 2002, Burlingame made its first loan advance to Python Injection, Inc. ("Python") in the total original principal amount of $1.7 million. Burlingame made subsequent advances pursuant to the Loan Documents such that the total principal amount owed as of December 31, 2005, was $3,673,050.60.

### O'Connor Induces Burlingame to Make the Secured Loan Based on False Financial Statements and other Misrepresentations

9.      In the course of soliciting the loan from Burlingame, and as part of the express representations and warranties under the Loan Agreement, O'Connor represented to Burlingame that Python's books and records were prepared and maintained in accordance with generally accepted accounting principles ("GAAP") and materially reflected the true value of Python's assets at the time. The financial statements that O'Connor provided to Burlingame in connection with the Loan Agreement indicated that Python had inventory, at the time, with a value of approximately $4 million. This representation was false at the time it was made. Burlingame is informed and believes and thereon alleges that the true value of Python's inventory at the time it executed the Loan Documents with O'Connor and Python was only approximately $500,000.

10.      In the course of soliciting the loan from Burlingame, and as part of the express representations and warranties under the Loan Agreement, O'Connor represented to Burlingame that Python carried only certain existing debts. These representations were, in fact, false. The financial statements that O'Connor provided to Burlingame in connection with the Loan

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

764589.01/OC

COMPLAINT

-3-

Agreement failed to disclose any alleged debts of Python to O'Connor. Such financial statements also failed to disclose Python's guaranty of a personal loan to O'Connor from California Bank & Trust in the amount of $100,000. Had Burlingame known the true facts about Python's existing insider debts, it would not have made the original loan or additional advances to Python.

**O'Connor's Scheme to Defraud Burlingame to Forbear and Extend Further Credit**

11.    Pursuant to the Loan Documents signed by O'Connor, Python had an affirmative obligation to inform Burlingame of any material change in the nature or location of Burlingame's collateral or in Python's business operations, and any further incurrence or payment of debt. Moreover, in the Loan Documents signed by O'Connor on behalf of Python, O'Connor and Python represented that the value of the collateral was at least equal to the outstanding amount of the loan. These representations by O'Connor and Python were renewed with every advance made by Burlingame under the Loan Documents.

12.    Burlingame is informed and believes that O'Connor, as an officer and shareholder of Python, was fully aware of and directed all of Python's business operations and the disposition of its assets and funds. In an effort to delay Burlingame's termination of Python's financing and his ability to extract as much value as possible from the continued operation of Python, O'Connor embarked on a fraudulent scheme to induce Burlingame to both forbear from declaring a default under the Loan Documents and extend further credit to Python.

O'Connor Causes Python to Pay His Personal Loans, in Violation of the Loan Documents, and Conceals Such Payments

13.    In late 1999 or early 2000, O'Connor obtained a loan from California Bank & Trust in the original principal amount of $91,346.85 (the "Cal Bank & Trust Loan"). In connection with the Cal Bank & Trust Loan, O'Connor executed a Commercial Guaranty on behalf of Python. The Cal Bank & Trust Loan was a personal loan to O'Connor and served no business purpose with respect to Python. Python did not receive any proceeds of the Cal Bank & Trust Loan. Nevertheless, in breach of his fiduciary to Python, O'Connor caused Python to make payments

Allen Matkins Leck Gamble & Mallory LLP
attorneys at law
764589.01/OC

COMPLAINT

-4-

totaling at least $104,203.72 in connection with the Cal Bank & Trust Loan during the period from November 1999 through July 27, 2005.

14.    Burlingame is informed and believes and thereon alleges that O'Connor concealed Python's payments on O'Connor's personal Cal Bank & Trust Loan from Python's board of directors and its audit accountants, White Nelson & Co., LLP, CPA, by listing such payments as general operating expenses of Python.

15.    Additionally, O'Connor caused Python to make two payments to Kenny Meier in the amounts of $10,000 each, on or about April 17, 2003 and December 26, 2003. O'Connor's payments to Kenny Meier served no business purpose of Python. Burlingame is informed and believes and thereon alleges that such payments were made to repay a personal loan made to O'Connor.

16.    O'Connor's use of Python funds to pay his personal Cal Bank & Trust Loan and loan from Kenny Meier were not disclosed to Python's board of directors or to Burlingame, in violation of Python's covenants and obligations under the Loan Documents. Moreover, Burlingame is informed and believes and thereon alleges that O'Connor's use of Python funds to pay his own personal loans may have resulted in a default under Python's senior secured loan from Merrill Lynch, which would constitute an adverse material change in Python's financial position about which Python and O'Connor were obligated to inform Burlingame.

### Diversion/Theft of Python Inventory, in Violation of the Loan Documents

17.    Burlingame is informed and believes and thereon alleges that while O'Connor was chief executive officer of Python, O'Connor allowed his son Jimmy O'Connor to systematically divert Python inventory to his own personal use and profit. During this time, Jimmy O'Connor received Python inventory with a value of over $200,000, without any compensation to Python.

18.    Python's inventory was Burlingame's collateral. Under the Loan Documents, Python and O'Connor had an obligation to disclose the disposition of such a substantial portion of Burlingame's collateral. O'Connor failed to disclose to Burlingame the diversion/theft of Python's inventory (Burlingame's collateral), in violation of Python's covenants and obligations under the Loan Documents. Moreover, Burlingame is informed and believes and thereon alleges that the

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

diversion/theft of Python inventory may have resulted in a default under Python's senior secured loan from Merrill Lynch, which would constitute an adverse material change in Python's financial position about which Python and O'Connor were obligated to inform Burlingame.

O'Connor's Use of Python Funds to Pay Personal Expenses

19.    For the period beginning January 2004 through and including June 2005, O'Connor caused Python to make payments totaling $35,278.41 on five of O'Connor's personal credit card accounts.

20.    On or about April 28, 2003, O'Connor caused Python to pay Heather Shrewsberry, his daughter, the amount of $2,000.

21.    On or about February 10, 2004, O'Connor caused Python to pay Tom Kroopf, the personal attorney for his son, Jimmy O'Connor, the amount of $2,000.  On or about March 24, 2004, the the Debtor caused Python to pay Tom Kroopf, the personal attorney for his son, Jimmy O'Connor, the amount of $350.

22.    On or about June 10, 2005, O'Connor caused Python to pay Darryl Hann, the landlord for O'Connor's personal storage unit, the amount of $630.

23.    These payments that O'Connor caused Python to make were not made for any business purpose of Python and constitute diversion of Python corporate funds to O'Connor's personal use.

O'Connor Causes Python to Make Payments to the Debtor on Undocumented Loans Allegedly Made to Python by O'Connor, in Violation of Python's Covenants under its Loan Agreements with Burlingame and Merril Lynch

24.    On or about June 30, 2003, O'Connor caused Python to pay to him $162,471.79, on account of an alleged undocumented, unsecured loan made by O'Connor to Python.

25.    On or about June 30, 2004, O'Connor caused Python to pay to him $147,723.83, on account of an alleged undocumented, unsecured loan made by O'Connor to Python.

26.    O'Connor's use of Python funds to repay his alleged loan to Python violated Python's covenants and obligations under the Loan Documents.  Burlingame is informed and believes and thereon alleges that O'Connor's use of Python funds to repay his alleged loan to

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

-6-

Python violated Python's covenants and obligations under its loan agreement with Merrill Lynch, putting Python in a position of default under such loan, which would constitute an adverse material change in Python's financial position about which Python and O'Connor were obligated to inform Burlingame. O'Connor's payments to himself also prevented Python from making the required loan payments to Merrill Lynch and Burlingame, such that Python has defaulted on its monetary obligations to both lenders.

## FIRST CLAIM FOR RELIEF

### (False Pretenses, False Representations or Actual Fraud)

### [11 U.S.C. § 523(a)(2)(A)]

27.     Plaintiff incorporates by this reference the allegations of paragraphs 1 through 26 above as though set forth in full.

28.     Beginning in or about 2002 and on several occasions thereafter, O'Connor represented to Burlingame that Python was a financially healthy company with no insider debt. Burlingame is informed and believes and thereon alleges, however, that O'Connor failed to reveal and suppressed the material facts that Python was in a poor financial condition and had substantial insider debt (including that allegedly owed to O'Connor). Additionally, after the initial loan was made but before Burlingame made additional loan advances, O'Connor failed to disclose that he had and was continuing to transfer substantial funds from the Burlingame loan proceeds to himself, his relatives and friends. The concealment and suppression of these facts misled Burlingame in light of the other representations made by O'Connor concerning the financial health of Python.

29.     As set forth in more detail above, O'Connor, individually and through Python and his agents, intentionally represented to Burlingame that (i) the value of Python's inventory at the time Burlingame made the Loan to Python was approximately $4 million; (ii) that Python had no undisclosed debts; and (iii) after Burlingame made the original advance under the Loan, but prior to further advances, that Python was not in default under its senior secured loan from Merrill Lynch.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

30. By act, conduct, and deed, O'Connor induced Burlingame, in reasonable reliance on O'Connor's representations, to enter into the Loan Documents, to forbear from declaring defaults under the Loan Documents, and make advances to Python pursuant to the Loan Documents.

31. These representations made by O'Connor were, in fact, false. Burlingame believes that the true facts at the time of O'Connor's representations were that (i) the value of Python's inventory was only $500,000; (ii) that Python had substantial undisclosed debts including, without limitation, a guaranty obligation to California Bank & Trust in connection with O'Connor's personal loans and an alleged undocumented, unsecured loan to O'Connor; and (iii) by diverting assets and funds of Python to his own personal use, O'Connor had caused Python to be in default under its senior secured loan from Merrill Lynch. In short, O'Connor had employed a scheme to cause Python to obtain loaned funds from Burlingame under false pretenses and based on material misrepresentations, to allow O'Connor to continue to divert value from Python to his own benefit.

32. Burlingame believes that when O'Connor made the foregoing representations, he knew them to be false and made such representations with the intent to deceive Burlingame and induce Burlingame to act in reliance on these representations in the manner alleged herein, or with the expectation that Burlingame would so act. Burlingame is informed and believes and thereon alleges that O'Connor's failures to disclose the information and the suppression of the information herein alleged was done with the intent to induce Burlingame to act in the manner herein alleged in reliance thereon. O'Connor, individually and through Python and his agents, made misrepresentations as to the value of Burlingame's collateral and Python's financial condition. O'Connor also concealed his self-interested transactions with Python and diversion of Python assets and funds. The combination of O'Connor's misrepresentations and self-dealing demonstrate O'Connor's intention to commit actual fraud.

33. At the time the foregoing representations were made, Burlingame was ignorant of the falsity of O'Connor's representations and believed them to be true. Burlingame justifiably relied upon the representations made by O'Connor in that Burlingame made the original loan, did forbear from terminating its financing to Python, and made additional loan advances. Burlingame, at the time of O'Connor's concealment and suppressions of facts occurred, and at the time

Burlingame took the actions herein alleged, was ignorant of the existence of the facts which O'Connor concealed and suppressed. If Burlingame had been aware of the existence of the facts not disclosed by O'Connor, it would not have made loans to Python or advanced additional funds to Python under the loans.

34.    In light of O'Connor's misrepresentations, concealment of facts and fraudulent activities, Burlingame has, and will continue to be injured unless the Court excepts Burlingame's debt from discharge.

35.    The misrepresentations, concealment of facts and fraudulent activities alleged herein constitute false pretenses, false representations, and actual fraud

36.    As a proximate result of O'Connor's misrepresentations and concealment and suppression of facts, Burlingame was induced to loan funds to Python. Burlingame's Loan to Python is now in default and has been in default since 2003. As a result, Plaintiff has been damaged in a sum not less than $4 million, to conform to proof at trial.

37.    The misrepresentations, concealment of facts and fraudulent activities alleged herein constitute false pretenses, false representations and actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

### SECOND CLAIM FOR RELIEF

**(Use of False Financial Statement to Induce Extension of Credit)**

**[11 U.S.C. § 523(a)(2)(B)]**

38.    Plaintiff incorporates by this reference the allegations of paragraphs 1 through 37 above as though set forth in full.

39.    As set forth in more detail above, O'Connor, individually and through Python and his agents, intentionally represented to Burlingame in writing in the form of Python's financial statements that the value of Python's inventory at the time Burlingame made the Loan to Python was approximately $4 million. Pursuant to the Loan Documents, Python's inventory was to be collateral for Burlingame's Loan to Python. Accordingly, the value of such inventory was material to Burlingame's decision to make the loan to Python.

40. At the time O'Connor made such representations to Burlingame, he knew them to be false. Burlingame is informed and believes and thereon alleges that O'Connor knew that the value of Python's inventory was materially inflated in the financial statements presented to Burlingame.

41. O'Connor presented the materially false financial statements to Burlingame with the intention and purpose of deceiving Burlingame and causing it to loan funds to Python in reliance on such financial statements. Burlingame in fact loaned funds to Python in reliance on the materially false financial statements, without knowledge of the falsehood.

42. As a proximate result of the failures of O'Connor's failure to disclose and suppressions of facts, Plaintiff was induced to would not have made loans to Python or advanced additional funds to Python under the loans, of which Plaintiff has been damaged in a sum not less than $4 million to conform to proof at trial.

### THIRD CLAIM FOR RELIEF

### (Willful and Malicious Injury)

### [11 U.S.C. § 523(a)(6)]

43. Burlingame incorporates by this reference the allegations of Paragraphs 1 though 43 above as though set forth in full.

44. As more fully described above, O'Connor engaged in a scheme to defraud Plaintiffs out of approximately $4 million, causing Plaintiffs substantial damage.

45. O'Connor's fraudulent acts, as described above, are willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

46. In light of O'Connor's willful and malicious acts, Plaintiffs have been and will continue to be injured unless the Court excepts O'Connor's debt to Plaintiffs from being discharged.

### PRAYER

WHEREFORE, Burlingame prays for relief against O'Connor as follows:

1. For a determination that O'Connor owes Burlingame the debt described hereinabove and that such debt owed to Burlingame for at least $4 million, plus interest (according

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

764589.01/OC

COMPLAINT

-10-

to proof at trial), is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(2)(A);

2.   For a determination that O'Connor owes Burlingame the debt described hereinabove and that such debt owed to Burlingame for at least $4 million, plus interest (according to proof at trial), is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(2)(B);

3.   For a determination that O'Connor owes Burlingame the debt described hereinabove and that such debt owed to Burlingame for at least $4 million, plus interest (according to proof at trial), is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(6);

4.   For reasonable attorneys' fees;

5.   For costs of suit; and

6.   For such other and further relief as the Court deems just and proper.

Dated:  January 6, 2006

ALLEN MATKINS LECK GAMBLE &
MALLORY LLP

By: _____
A. KENNETH HENNESAY, JR.
Attorneys for Plaintiffs and Creditors
BURLINGAME CAPITAL PARTNERS II,
L.P.

ORIGINAL

| B. 104 (Rev.8/99) | **ADVERSARY PROCEEDING SHEET** (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|---|

| **PLAINTIFFS** BURLINGAME CAPITAL PARTNERS II, L.P, a California limited partnership | **DEFENDANTS** TERRY J. O'CONNOR |
|---|---|
| Address 2755 Campus Drive, Ste. 125 San Mateo, CA 94403 | Address 10331 Randall Street Orange, CA 926869 |

RECEIVED

JAN – 6 2006

CLERK U.S. ... RT
CENTRAL DISTRICT OF ...

| **ATTORNEYS** (Firm Name, Address, and Telephone Number) VINCENT M. COSCINO, Bar #122086/ KENNETH HENNESAY, JR., #187531 **ALLEN MATKINS LECK GAMBLE & MALLORY** 1900 Main Street, Fifth Floor Irvine, CA 92614-7321        E-mail: khennesay@allenmatkins.com Tele:(949) 553-1515        Fax: (949)553-8354 | **ATTORNEYS** (if known) Jeffrey W. Broker, Esq. 18191 Von Karman Avenue, Suite 470 Irvine, CA 92612-0187 Tele: (949) 222-2000 |
|---|---|

| **PARTY** (Check one box only) | ☐ 1 U.S. PLAINTIFF | ☐ 2 U.S. DEFENDANT | ☒ 3 U.S. NOT A PARTY |
|---|---|---|---|

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved)

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

**NATURE OF SUIT**
(Check the one most appropriate box only)

| ☐ 454 To recover money or property | ☐ 455 To revoke an order of confirmation of a Chapter 11 or Chapter 13 Plan | ☐ 456 To obtain a declaratory judgment relating to any of the foregoing causes of action |
|---|---|---|
| ☐ 435 To determine validity, priority, or extent of a lien or other interest in property | ☒ 426 To determine the dischargeability of a debt 11 U.S.C. § 523 | |
| ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property | ☐ 434 To obtain an injunction or other equitable relief | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| | ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a Plan | |
| ☐ 424 To object or to revoke a discharge 11 U.S.C. § 727 | | ☐ 498 Other (specify) |

| **ORIGIN OF PROCEEDINGS** (Check one box only) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| **DEMAND** | NEAREST THOUSAND $ 4,000,000.00 | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR Terry J. O'Connor | BANKRUPTCY CASE NUMBER: SA 05-19544-RA |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING CENTRAL | DIVISIONAL OFFICE Santa Ana | NAME OF JUDGE Robert W. Alberts |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF Python Injections, Inc. | DEFENDANT Terry J. O'Connor | ADVERSARY PROCEEDING NUMBER: To Be Assigned |
|---|---|---|
| DISTRICT Central | DIVISIONAL OFFICE Santa Ana | NAME OF JUDGE Robert W. Alberts |

| **FILING FEE** (Check one box only) | ☒ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|
| DATE Jan. 6, 2006 | PRINT NAME A. Kenneth Hennesay, Jr. | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |

B104

B-104
(Rev. 8/99)

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the Court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the Clerk of the Court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the Clerk of the Court for each complaint filed. The form is largely self-explanatory.

**Parties.** The names of the parties to the adversary proceeding *exactly* as they appear on the complaint. Give the names and addresses of the attorneys if known. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. § 544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:

1. Original Proceeding.
2. Removed from a State or District Court.
4. Reinstated or Reopened.
5. Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000, enter "1," for $10,000, enter "10," for $100,000, enter "100," if $1,000,000, enter "1000." If $10,000,000 or more, enter "9999." If the amount is less than $1,000, enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case in Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and the six-digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se,* that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.